# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |  |
|---|---|---|---|
| RAMHARI SUBEDI and ANIRUDRA GAIRE, individually and on behalf of all others similarly situated, | ) ) ) ) ) |  |  |
|  | ) | Case No. | 09 C 4525 |
| Plaintiffs, | ) ) |  |  |
|  | ) | Judge St. Eve |  |
| v. | ) ) |  |  |
|  | ) | Magistrate Mason |  |
| LOUISE MERCHANT; INTERNATIONAL H-2B/J-1 WORK & TRAVEL USA, CORPORATION; IWT INTERNATIONAL, INC.; and IWT STAFFING, INC., | ) ) ) ) |  |  |
|  | ) |  |  |
| Defendants. | ) |  |  |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION[1]

### Introduction

Plaintiffs Ramhari Subedi ("Subedi") and Anirudra Gaire ("Gaire") are individuals who

paid money to Defendants Louise Merchant ("Merchant") and/or International H-2B/J-1 Work &

---

[1]      This Court expressed a concern about certifying a class in the absence of an appearance by any Defendant. However, nothing in Fed. R. Civ. P. 23 precludes class certification in the absence of an opposing party. Indeed, defendants could avoid larger, class-wide judgments by simply taking a default judgment if that were the case. In *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003), the Seventh Circuit reversed a class-wide default judgment, but it did so because the trial court judge certified the class "by default" based solely on the allegations in the complaint and without conducting a Rule 23 analysis. As set forth below, Plaintiffs have demonstrated their compliance with all Rule 23 requirements and, as such, this Court should certified the requested class. *See e.g., Gordon v. Corporate Receivables, Inc.*, No. 09-230S, 2010 U.S. Dist. LEXIS 6671 (D.R.I. Jan. 27, 2010) (certifying class in absence of appearance or responsive pleading by defendant); *Georigi v. Recon Automotive Remanufacturers*, No. 07-5509, 2009 U.S. Dist. LEXIS 40016 (E.D. Pa. May 8, 2009) (same); *Katz v. MRT Holdings, LLC*, No. 07-61438-CIV, 2008 U.S. Dist. LEXIS 45586 (S.D Fla. Oct. 24, 2008) (same); *Quintero v. Mulberry Thai Silks, Inc.*, No. C 08-02294 MHP, 2008 U.S. Dist. LEXIS 84976 (N.D. Ca. Oct. 22, 2008) (granting class certification even after default entered); *Davis v. Precise Communication Services, Inc.*, No. 1:07-CV-3128-JOF, 2009 U.S. Dist. LEXIS 26171, *4 (N.D. Ga. Mar. 27, 2009) (certifying FLSA collective action in absence of appearance or responsive pleading by defendant and recognize that judicial economy would be served because, in the case of default without certification, "only the named plaintiffs would be able to enforce it. Numerous potential plaintiffs would not receive any redress for their claims and would likely file separate suits resulting in an additional burden on the court.").

Travel USA, Corporation ("International") for the purpose of obtaining I-797 certifications, H-2B or J-1 visas and seasonal employment in the United States for foreign workers. Plaintiffs seek to represent a class of individuals who also paid money to Merchant and/or International for the purpose of obtaining I-797 certifications, H-2B or J-1 visas and jobs in the United States.

In the spring of 2008, Merchant and International represented to Plaintiffs and the putative class members, through the use of wires in a uniform manner, that, if they wired funds to International, International would obtain for them I-797 certifications, H-2B or J-1 visas and seasonal employment in the United States starting on October 1, 2008. At the time the representations were made, however, neither Merchant nor International had the ability or intent to obtain any of those benefits for Plaintiffs or putative class members. Indeed, the limited allotment of H-2B visas granted by the United States for employment starting October 1, 2008 was depleted months before Merchant and International solicited money from Plaintiffs and the putative class members, but Merchant and International concealed that critical fact from Plaintiffs and the putative class members. Nonetheless, Merchant and International required Plaintiffs and the putative class members to wire money to International under the guise of providing certifications, visas and jobs to Plaintiffs and the putative class members, which Merchant and International knew they could never obtain. In so doing, Merchant and International defrauded Plaintiffs and the class of thousands of dollars.[2] IWT International, Inc. and IWT Staffing, Inc. are successors to International.

---

[2] Merchant and International defrauded an even greater number of people of hundreds of thousands of dollars in this scheme, but the identity of all affected individuals is unknown to Plaintiffs. *See* **Group Exhibit 1**.

Plaintiffs brought this class action to seek redress for Defendants' failure to provide I-797 certifications, H-2B or J-1 visas or seasonal jobs in the United States despite having charged a fee for doing so. Plaintiffs' claims are the same or similar to the claims of all absent putative class members, i.e., each received misrepresentations from Merchant and/or International about the ability and intent to obtain certifications, visas and jobs in exchange for a fee; each paid money to International to obtain certifications, visas and jobs; and none was provided a certification, visa or job by Defendants. Because no individual issues exist that would preclude classwide disposition of this case, Plaintiffs seek to certify the following class:

> All persons identified by Plaintiffs who paid a fee to Louise Merchant and/or International H-2B/J-1 Work & Travel USA, Corporation for the purpose of obtaining a H-2B or J-1 visa but did not receive a H-2B or J-1 visa procured by Louise Merchant and/or International H-2B/J-1 Work & Travel USA, Corporation.

Specifically, the Class is comprised of the individuals identified in the attached **Exhibit 2**.

## Legal Standard

The class action was designed to promote a fair and expeditious resolution of claims of a large number of people seeking relief for the same unlawful occurrence, practice or procedure. Under the Federal Rules of Civil Procedure, a class should be certified when a plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). Rule 23 is to be construed liberally and read to favor the maintenance of class actions.[3] Further, when evaluating

---

[3]  *See Cannon v. Nationwide Acceptance Corp.*, No. 96-C1136, 1997 U.S. Dist. LEXIS 3517, *4 (N.D. Ill. Mar. 24, 1997).

a motion for class certification, a court accepts as true the allegations made in support of certification, and does not examine the merits of the case.[4]

<strong><u>Discussion</u></strong>

**I.     PLAINTIFFS MEET ALL RULE 23(a) REQUIREMENTS.**

Rule 23(a) requires a movant to demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

**A.     Numerosity.**

Impracticability exists where individual adjudication would take an extended period of time and joinder of all the parties would be expensive, time consuming and "a strain on already overtaxed judicial resources."[5] "While there is no 'bright line' test for numerosity, courts have found this element satisfied where the putative class would number in the range of as few as 10 to 40."[6]

---

[4]     *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

[5]     *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992).

[6]     *Khalil Abdur Rahim v. Sheahan*, No. 99-C0395, 2001 U.S. Dist. LEXIS 17214, *37-38 (N.D. Ill. Oct. 18, 2001); *see, e.g., Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (29 sufficient); *Barner v. Harvey*, No. 95-C3316, 1997 U.S. Dist. LEXIS 3570 (N.D. Ill. Mar. 25, 1997) (class of 13 certified where other factors made joinder impracticable); *Gaspar v. Linvatee Corp.*, 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) (class of 18 certified); *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (40 sufficient).

Here, the putative class consists of 165 persons.[7]  Additionally, virtually all of the

putative class members are resident in other countries.[8]  Indeed, the absence of putative class

members from the United States is the crux of this lawsuit.  They were precluded from being

present, which equally demonstrates the difficulty in them bringing and prosecuting individual

claims against Defendants in this country.  Thus, Plaintiffs have established that joinder of all

class members would be impracticable and meets the requirements of Rule 23(a)(1).

### B.      Commonality.

"A common nucleus of operative fact is usually enough to satisfy the commonality

requirement of Rule 23(a)(2)."[9]  So long as at least one issue of law or fact is common to all

class members, a class should be certified.  Where a question of law involves standardized

conduct toward members of the proposed class, a common nucleus of operative facts is typically

found, and the commonality requirement is usually met.[10]

Plaintiffs allege that Defendants employed standardized methods, including the use of

wires, to induce Plaintiffs and putative class members into paying Defendants to obtain I-797

certifications, H-2B or J-1 visas and jobs for them while not have the capacity or intent to obtain

---

[7]      *See* Exhibit 2 (class list).

[8]      *See* Certification of Ramhari Subedi ("Subedi Cert.") at ¶ 8, included herewith as **Exhibit 3** and
incorporated herein by reference.

[9]      *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)  (citing *Rosario v. Livaditis*, 963 F.2d 1013,
1018 (7th Cir. 1992)).

[10]      *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D. Ill. 1995) (*citing Franklin v.
City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984)).  *See also Johnson v. Steven Sims Subaru, Inc.*,
No. 92-C6355, 1993 U.S. Dist. LEXIS 8078, *9 (N.D. Ill. June 9, 1993) (finding commonality in
proposed TILA class when each class member signed the same form and the claim addressed "a legal
question common to all class members, namely, whether their printed lease form complied with
disclosure requirements of TILA and its enforcement provision, Regulation M.").

I-797 certifications, H-2B or J-1 visas and jobs.[11]  Additionally, Plaintiffs allege that Defendants

employed standardized methods to require Plaintiffs and putative class members to pay fees to

Defendants by wire.[12]  Furthermore, Plaintiffs allege that Defendants employed standardized

methods to conceal from Plaintiffs and putative class members that Defendants could not, and

had no intent to, obtain I-797 certifications, H-2B or J-1 visas or jobs for them.[13]  Moreover,

Plaintiffs allege that Defendants absconded with the fees that Plaintiffs and putative class

members paid Defendants.[14]

Plaintiffs' claims are universal and identical to the experiences of the absent putative

class members.  Although a common question of either law or fact can be used to support a class

action, both exist here.  The common questions of fact for the class are

> (a)   Whether Plaintiffs and the Class paid Defendants for the purpose of obtaining I-797 certifications and H-2B or J-1 visas;
>
> (b)   Whether Defendants procured I-797 certifications and H-2B or J-1 visas for Plaintiffs and the Class;
>
> (c)   Whether Defendants had the capacity to procure I-797 certifications and H-2B or J-1 visas for Plaintiffs and the Class;
>
> (d)   Whether Defendants had the intent to procure I-797 certifications and H-2B or J-1 visas for Plaintiffs and the Class;
>
> (e)   Whether Defendants misappropriated funds of Plaintiffs and the Class for purposes other than procuring I-797 certifications and H-2B or J-1 visas for Plaintiffs and the Class;

---

[11]     *See* Complaint at ¶¶ 25-30, 33-34, 41-42, 44, 46, 57-58, 65-68, 78; *see also* Subedi Cert. at ¶¶ 2, 3, 8, 11 (Exhibit 3 hereto).

[12]     *See* Complaint at ¶ 47-48, 59, 70-71, 80; *see also* Subedi Cert. at ¶¶ 4, 8, 11 (Exhibit 3 hereto).

[13]     *See* Complaint at ¶ 49, 51-52; 72 *see also* Subedi Cert. at ¶¶ 9, 10 (Exhibit 3 hereto).

[14]     *See* Complaint at ¶ 50, 52, 55, 60, 73, 81; *see also* Subedi Cert. at ¶ 11 (Exhibit 3 hereto).

(f)      Whether Defendants represented that they would obtain I-797 certifications and H-2B or J-1 visas for Plaintiffs and putative class members;

(g)      Whether International, IWT International and IWT Staffing are enterprises; and

(h)      Whether IWT International and IWT Staffing are successors to International.

The common questions of law are

(a)      Whether Defendants' uniform conduct constituted a breach of contract and/or breach of fiduciary duty;

(b)      Whether Defendants' uniform misrepresentations constituted unfair or deceptive trade practices;

(c)      Whether Defendants' uniform conduct constituted violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815, ILCS 505/1, *et seq.*;

(d)      Whether Defendants' uniform conduct was intentional;

(e)      Whether Defendants' uniform conduct was negligent; and

(f)      Whether Merchant's uniform conduct constituted a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.

Because there is a common nucleus of operative facts as to all putative class members' transactions with Defendants, and these facts could provide for a finding of liability under the various counts of the Complaint, Plaintiffs satisfy the commonality requirement of Rule 23(a)(2).

**C.    Typicality.**

Rule 23(a)(3) is satisfied if the representative's claim " 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the

representative's] claims are based on the same legal theory.' "[15]  Because commonality and typicality are closely related, a finding of one often results in a finding of the other.[16]  Here, Plaintiffs' claims cannot be factually distinguished from the claims of absent putative class members because each claim arises from Defendants' fraudulent practices and uniform course of conduct, i.e., Defendants' scheme to induce applicants to pay fees to Defendants for documents and jobs that Defendants never had the ability or intent to provide.  Each claim is also based on the same legal theories, including breach of contract, breach of fiduciary duty, consumer fraud, common law fraud, negligence and RICO.  Accordingly, Plaintiff has met the typicality requirement of Rule 23(a)(3).

### D.    Adequacy of Representation.

To meet the requirements of Rule 23(a)(4), a Plaintiff "cannot have antagonistic or conflicting claims with other members of the class" and "must have a 'sufficient interest in the outcome to ensure vigorous advocacy'" and his attorney "must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously."[17]

First, no conflict or antagonism exists between Plaintiffs and putative class members given the identical nature of their claims.[18]  Second, Plaintiffs have a clear interest in the

---

[15]    *Clark v. Retrieval Masters Creditors Bureau*, 185 F.R.D. 247, 249 (N.D. Ill. 1998) (*quoting De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

[16]    *Rosario,* 963 F.2d at 1018 (noting that "[t]he question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality."); *see also Sanders v. OSI Education Services, Inc.*, No. 01 C 2081, 2001 U.S. Dist. LEXIS 12578, at *5 (N.D. Ill. Aug. 2, 2001).

[17]    *Gammon v. GC Services,* 162 F.R.D. 313, 317 (N.D. Ill. 1995) (*quoting Riordan*, 113 F.R.D. at 64) (citation omitted)).

[18]    *Rosario*, 963 F.2d at 1018.

successful outcome of the lawsuit, because they seek to recover damages for themselves and the putative class and, as demonstrated by their participation in this lawsuit to date, which includes gathering evidence from around the world, reviewing pleadings and disseminating information about these proceedings to putative class members.[19]    Third, Plaintiffs have hired counsel who are active practitioners in consumer class cases with experience, diligence, and commitment to this litigation and to protect the interests of the class.[20]    Therefore, Plaintiffs and their counsel meet the adequacy requirements of Rule 23(a)(4).[21]

## II.    PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b).  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires a showing "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the available methods for the fair and efficient adjudication of the controversy."  Plaintiffs meet those requirements.

---

[19]    *See* Subedi Cert. at ¶ 12 (Exhibit 3 hereto).

[20]    A cursory review of reported cases in this jurisdiction alone shows that Plaintiffs' counsel has been deemed adequate class counsel many times, most recently in *Armes v. Shanta Enterprise, Inc.*, 07-C5766, 2009 U.S. Dist. LEXIS 58385, *8 (N.D. Ill. July 8, 2009).  At no time has Plaintiffs' counsel been found to be inadequate class counsel.

[21]    Plaintiffs' counsel also meet the requirements of Rule 23(g).  Counsel significantly researched the relevant immigration laws, the CFA, RICO and potentially responsible parties.

**A.      Common Questions of Law or Fact Predominate.**

A common question of law or fact predominates when there is a common factual link between all the class members and the defendant for which the law provides a remedy.[22]  "The commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) are closely related and a finding of one will generally satisfy the other."[23]

Common questions predominate for the putative class because Defendants uniformly sought to induce fee payments from putative class members through standardized representations and conduct involving the use of wires.  Whether Defendants' conduct amounts to liability under the theories advanced in the Complaint is a determination that will apply universally to each putative class member.

**B.      A Class Action is Superior to Other Available Methods to Adjudicate this Controversy.**

"Under Rule 23(b)(3), a class action must . . . be superior to other available methods for the fair and efficient adjudication of the controversy."[24]  A court is required to determine the best available method for resolving the claims in keeping with judicial economy, efficiency, and consistency.[25]  In making a determination of superiority, "[i]t cannot seriously be disputed that a class action is the most efficient method of adjudicating the claims of numerous class members who, largely unsophisticated and uninformed of their rights, might not otherwise possess the

---

[22]      *See Daley v. Provena Hospitals*, 193 F.R.D. 526, 529 (N.D. Ill. 2000).

[23]      *See Clark*, 185 F.R.D. at 250 (*citing Villareal v. Snow*, No. 95-C2484, 1996 U.S. Dist. LEXIS 667, *15 (N.D. Ill. January 16, 1996)).

[24]      *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-C1995, 2004 U.S. Dist. LEXIS 5462, *16 (N.D. Ill. Mar. 31, 2004).

[25]      *See Scholes*, 143 F.R.D. at 189.

initiative to commence an action on their own behalf."[26] Thus, by maintaining the litigation as a class action, those aggrieved individuals will receive the protections contemplated by law that they otherwise would not; accordingly, the failure to certify a class will result in a failure of justice.[27]

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied.[28]

Furthermore, "[C]ourts hold that claims dealing with the legality of standardized . . . conduct are generally appropriate for resolution by means of a class action because the . . . conduct is the focal point of the analysis."[29]

Here, a class action is the superior and most efficient means of assessing the legality of the Defendants' standardized conduct, i.e. falsely representing that they would obtain I-797 certifications, H-2B or J-1 visas and jobs in the United States, because Plaintiffs allege that

---

[26]     *Davis v. Suran*, No. 98-C0656, 1998 U.S. Dist. LEXIS 12233, *11 (N.D. Ill. Aug. 3, 1998).

[27]     *See Villareal*, 1996 U.S. Dist. LEXIS 667 at *16-17 (finding that "[m]ost of the proposed class members are likely to be individual consumers who are unaware of their rights under the FDCPA. Class actions in such cases are favored because, even if aware of their rights, class members may lack the initiative to bring suits individually[.]").

[28]     *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).

[29]     *Shaver v. Trauner*, No. 97-1309, 1998 U.S. Dist. LEXIS 19648, *18 (C.D. Ill. July 31, 1998) (citation omitted).

Defendants acted wrongfully in a manner universal to all putative class members.[30] As a result, "adjudicating the class claims here will take no more effort than it would to adjudicate the claims of Plaintiffs alone."[31] Additionally, virtually all of the putative class members are not in this country, thus making individual suits, in which they would not even be allowed to enter the country to testify, extraordinarily difficult and unlikely. Furthermore, each putative class member's claim, typically a few hundred dollars, is so small that no incentive for individual claims exists.[32] A class action will protect the rights of those individuals and will provide the efficiency of a single litigation that should not present any significant management problems if certified.[33] Indeed, each class member is readily identifiable and can be contacted by regular mail and/or email for notice purposes.

**Conclusion**

For the foregoing reasons, Plaintiffs Ramhari Subedi and Anirudra Gaire request that this Court certify the following class:

> All persons identified by Plaintiffs who paid a fee to Louise Merchant and/or International H-2B/J-1 Work & Travel USA, Corporation for the purpose of obtaining a H-2B or J-1 visa but did not receive a H-2B or J-1 visa procured by Louise Merchant and/or International H-2B/J-1 Work & Travel USA, Corporation.

Specifically, the Class is comprised of the individuals identified in the attached Exhibit 2.

---

[30] *See Beasley v. Blatt*, No. 93-C4978, 1994 U.S. Dist. LEXIS 9383, *13 (N.D. Ill. July 8, 1994).

[31] *Burns v. First American Bank*, No. 04-C7682, 2006 U.S. Dist. LEXIS 92159, *40.

[32] *See e.g., Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

[33] *See Cox v. Joe Rizza Ford, Inc*., No 94-C5688, 1996 U.S. Dist. LEXIS 1581, *33 (N.D. Ill. Feb. 9, 1996); *Redd v. Arrow Fin. Servs., LLC*, No. 03-C1341, 2004 U.S. Dist. LEXIS 5421, * 17-20 (N.D. Ill. Mar. 31, 2004).

RAMHARI SUBEDI AND
ANIRUDRA GAIRE, Plaintiffs,


By:     s/ Paul F. Markoff
        One of Plaintiff's Attorneys

Paul F. Markoff                          Lance A. Raphael
Markoff Law Firm, LLC                    Allison A. Krumhorn
180 W. Washington St., Ste. 700          The Consumer Advocacy Center, P.C.
Chicago, IL 60602                        180 W. Washington St., Ste. 700
312.726.4162                             Chicago, IL 60602
                                         312.782.5808